CATERPILLAR TRACTOR COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Thomas Price, Appellee).

Third District (Industrial Commission Division)   No. 3—87—0586WC

Opinion filed May 26, 1988.

McNAMARA and McCULLOUGH, JJ., dissenting.

Robert F. Fahey, of Peoria, for appellant.

G. Douglas Stephens, of G. Douglas Stephens & Associates, P.C., and Gordon M. Fiddes, of Stephens, Schlicksup & Associates, P.C., both of Peoria, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Thomas Price, filed his application for adjustment of claim against his employer, respondent Caterpillar Tractor Company. Claimant alleged that he stepped off a curb after leaving work and sustained injuries to his right side. The arbitrator denied benefits. The Industrial Commission (Commission) reversed the decision of the arbitrator finding that the employee sustained accidental injuries and awarded 12½% loss of the use of the foot plus 21 weeks of temporary total disability. The circuit court of Peoria County confirmed the decision of the Commission. The respondent now appeals.

The sole issue raised on appeal is whether the claimant in this case was exposed to an unusual risk of injury by his employment. We affirm.

Claimant testified at the hearing before the arbitrator as follows. On July 7, 1979, he was employed by the respondent. On that date, he was leaving work at the end of his shift and going to his car in the parking lot, which is located on the respondent's property. The parking lot is maintained by the respondent for the employees to park their vehicles in. Claimant exited the building normally used by employees. Immediately outside the exit is a sidewalk. At the edge of the sidewalk is a curb running parallel to the sidewalk. Running parallel to the curb is a sloped cement incline apparently used for drainage. Running parallel to the incline is a blacktop drive used by persons who come to pick up employees. The incline is between the curb and the blacktop drive. Beyond the drive is the employee parking lot where claimant's car was parked. While proceeding to his car, claimant stepped off the curb, with his right foot landing half on the cement incline and half on the blacktop driveway, twisting his right ankle. The result was a fractured medial malleolus of the claimant's right ankle. Claimant was hospitalized at St. Francis Medical Center from July 10, 1979, to July 12, 1979, where a closed manipulation of the right ankle was performed with the application of a right leg cast. As a result of the injury and subsequent hospitalization, claimant remained off of work for five months. After he had returned to his regular duties, he continued to experience pain and discomfort in connection with his right leg.

In determining that claimant had failed to prove accidental injuries arising out of his employment, the arbitrator stated:

> "The arbitrator finds that stepping from the curb and twisting the ankle was not resultant from a risk peculiar to the employment of the Petitioner. The employee was not exposed to a risk of injury greater than that of the general public based on the

evidence submitted in this cause."

In reversing the arbitrator's decision, the Commission made the following finding:

> "Petitioner was a 38 year old laborer. It is undisputed that on July 7, 1979, Petitioner was leaving the building where he worked and was still on company premises when he stepped off a curb in order to reach a parking lot provided by Respondent for its employees. There was a slight slope for drainage between the curb and the driveway adjacent to the parking lot and Petitioner twisted his right ankle as he stepped down off this curb. Petitioner had to step off the curb to get to the parking lot."

Relying on *Chicago Tribune Co. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 260, the Commission concluded that the injury sustained by claimant on July 7, 1979, arose out of and in the course of his employment. On review, the circuit court of Peoria County found that the Commission's decision was not against the manifest weight of the evidence and confirmed the decision. This appeal followed.

> "The purpose of the Illinois Workers' Compensation Act is to protect the employee against risks and hazards which are peculiar to the nature of the work he is employed to do. [Citation.] An injury is compensable under the Workers' Compensation Act only if it 'aris[es] out of' and 'in the course of' employment. [Citation.] The phrase 'in the course of' refers to the time, place, and circumstances under which the accident occurred. [Citation.] *** The words 'arising out of' and 'in the course of' are used conjunctively, and therefore both elements must be present at the time of the accidental injury in order to justify compensation. [Citation.]" *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 44-45.

A person is generally under the coverage of the Act when going to and from work on the employee's premises. (*Jewel Cos. v. Industrial Comm'n* (1974), 57 Ill. 2d 38, 40.) It is undisputed that claimant was leaving work and still on the respondent's premises at the time the accident occurred. However, respondent contends claimant's injuries did not "arise out of his employment" unless claimant can show that his injury occurred as a direct result of a defect in the employer's premises or was directly related to the specific duties of employment. *Orsini*, 117 Ill. 2d at 48.

We agree with the Commission that the decision in this case is controlled by *Chicago Tribune Co. v. Industrial Comm'n*. In that case, the employee was injured when she slipped and fell in an area

on the employer's premises she had to pass through in order to get to her work station. Like the respondent in the case before us, the employer argued that it should be relieved of liability in light of the fact that the employee was injured in an area which was open to the public, and that the risk was one common to the public, and therefore did not arise out of the employee's employment. The court responded as follows:

"It is difficult to see how the respondent can escape liability by exposing the public to the same risks encountered by its employees. The short answer is that claimant was required to be in the area in order to get to her work station. No such onus lay [sic] upon the public." Chicago Tribune Co. v. Industrial Comm'n (1985), 136 Ill. App. 3d 260, 264.

Respondent argues that the Commission's reliance on Chicago Tribune Co. is misplaced since in that case the facts showed that the employee's injury could have come from slipping on ice, snow, or water on the floor, whereas in the case before us, there is no evidence of a defect or hazardous condition that caused the injury to claimant's ankle. We disagree.

In Chicago Tribune Co., claimant did not recall whether the floor was wet or dry where she fell. She did not know what caused her to fall, but she did not faint or trip over her feet. A security guard who saw claimant fall testified that there was no ice, snow, or water on the floor. He could not recall the weather conditions on that day; however, when it was snowy and wet outside, people would track the snow and water in on the floor. The court found that there was no evidence of any physical condition existing in the claimant which could have caused the fall and, further, from the evidence, the Commission could have drawn the inference that there might have been ice and snow on the floor, despite the denial by the security guard.

■ Based on the above, we are of the opinion that there was sufficient evidence establishing both that claimant's injuries resulted from a defect in the employer's premises and that the claimant's injuries were directly related to the duties of his employment. The employer provided a parking lot for the employees to park their vehicles on the employer's premises. In order to obtain access to his vehicle, it was necessary for claimant to utilize the walkway where his injury occurred. Further, there is evidence that there existed a slight slope for drainage between the curb and the driveway. There was no evidence that claimant tripped or fainted, nor is there any evidence that the accident was caused by any physical condition existing in the claimant. The Commission could properly have inferred from claimant's testi-

mony that the cause of claimant's injury was the existence of the slope and that the injuries were directly related to his employment. Further, since claimant was required to step off the curb to reach his vehicle, and there is no such requirement of the general public (see *Chicago Tribune Co.*, 136 Ill. App. 3d at 264), claimant was subjected to a risk not required of the general public.

Following oral argument and by leave of this court, respondent has cited to us, as additional authority, the case of *Freeman United Coal Mining Co. v. Industrial Comm'n* (1987), 160 Ill. App. 3d 524. However, despite certain factual similarities between that case and the case at bar, the issue in that case decided by this court was whether the Commission's finding that the employer failed to sustain the defense of intoxication because there was no evidence that the decedent there was so intoxicated that he could not perform the duties of his employment. There is no issue of intoxication in the case before us. Moreover, the respondent does not rely on *Freeman United Coal Mining* but instead attempts to distinguish it. We note that in that case, the evidence established that the inclement weather may have caused decedent's fall, just as in the case at bar there was evidence that the condition of the premises was the cause of claimant's fall.

■ It is the prerogative of the Industrial Commission to decide disputed questions of fact, resolve conflicting medical testimony, and draw reasonable inferences therefrom. We may not disregard the findings of the Industrial Commission even though we may have decided differently on the same facts unless the Commission's findings are against the manifest weight of the evidence. *Shockley v. Industrial Comm'n* (1979), 75 Ill. 2d 189.

■ The dissent maintains that nowhere in the facts is there any evidence of the existence or nature of "defect," and points out that the evidence in *Chicago Tribune* permitted the reasonable inference that snow, ice, and water had collected on a particular lobby floor. The dissent's view overlooks the fact that the Commission apparently considered the "sloped cement incline" parallel to the curb to be the defect in this case. The fact that the curb in question might be the same as any other curb (the record is silent on this point), as the dissent suggests, does not prevent it from being found to be defective, since all such similarly designed curbs could be deemed defective. Further, in *Chicago Tribune*, there was no direct evidence that ice, snow, or water was present on the floor at the time of the employee's fall in that case, merely that the evidence permitted such an inference to be drawn. We are of the opinion that given the fact that claimant's fall in this case is otherwise unexplained, there was a reasonable basis for

the Commission to infer that the condition of the premises was the cause of claimant's injury.

Respondent's reliance on *Elliot v. Industrial Comm'n* (1987), 153 Ill. App. 3d 238, is misplaced as well. In that case, the employee, while going downstairs, slipped and his leg gave way. The Commission awarded benefits. However, this court vacated the award, holding that the Commission's decision that the claimant's fall was unexplained and not idiopathic in nature, or that the injury could be an aggravation of a prior work-related injury, was contrary to the manifest weight of the evidence. Unlike the case before us, we found in *Elliot* that the evidence showed that the employee's condition was not unexplained, but was caused by an idiopathic condition resulting from a prior automobile accident.

We conclude therefore that the decision of the Industrial Commission is not against the manifest weight of the evidence.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, P.J., and CALVO, J., concur.

JUSTICE McNAMARA, dissenting:

I respectfully dissent from the majority holding affirming the Industrial Commission's award. I would hold that claimant's injury did not arise out of his employment.

The majority cites *Jewel Cos. v. Industrial Comm'n* (1974), 57 Ill. 2d 38, for the general rule that an injury which occurs while going to and from work on the employer's premises is compensable. This broad statement ignores the widely varying circumstances under which such a compensable injury might occur.

Not all parking lot accidental injuries are compensable. (*Peel v. Industrial Comm'n* (1977), 66 Ill. 2d 257.) Although an employee's presence in the employer's parking lot may satisfy the "in the course of" requirement, such a location fails, by itself, to satisfy the second requirement that claimant show the injury arose out of his employment. (*Rogers v. Industrial Comm'n* (1980), 83 Ill. 2d 221.) Thus, claimant must show that the injury resulted from a hazard or risk connected with or incidental to the employment situation. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 210; *Eisenberg v. Industrial Comm'n* (1976), 65 Ill. 2d 232.) Compensation has been awarded where claimant proves that, by reason of his employment, he was subject to a hazard to which the general public was not exposed,

or to which he was exposed peculiarly and to a greater degree than the public. *McField v. Lincoln Hotel* (1962), 35 Ill. App. 2d 340.

In the present case, claimant walked across a sidewalk, stepped on the low, rounded curb, and then stepped down with his foot half on the blacktop and half on the "little slope." He explained that "the blacktop sits up just a little bit above where the slope is itself." Nothing indicates that he encountered anything other than a normal sidewalk and curb area. Claimant's accident and injury typify that suffered by any member of the general public who steps off a curb and twists his ankle. While every member of the general public may not cross this particular curb, the law makes no such requirement.

Absolutely nothing here reveals even the smallest connection between the employment and the accident. I disagree with the majority that it was reasonable for the Commission to infer that "the cause of claimant's injury was the existence of the slope and that the injuries were directly related to his employment." (170 Ill. App. 3d at 152.) I do not believe the Act imposes upon employers the duty to measure the inappreciable differences in the heights of apparently commonplace curbs, and depths of commonplace drainage slopes, to determine whether they are in fact commonplace. Moreover, the mere fact that the curb leads to the employee parking lot provided by the employer, standing alone, merits no weight under these circumstances.

I must reject the majority's questionable assertion that "since claimant was required to step off the curb to reach his vehicle, and there is no such requirement of the general public [citation], claimant was subjected to a risk not required of the general public." (170 Ill. App. 3d at 152.) The present case offers no single fact, or combination of facts, connecting the cause of the fall to the employment. The record reveals no evidence of weather conditions, hazardous ground conditions, or employment duties which placed claimant in a position where he was subject to a risk of falling greater than the risk faced by any member of the general public who was walking across a street. I conclude that claimant shares the general public's exposure to this hazard, *i.e.*, a curb with or without a "little slope." The majority's suggestion that only employees and not the public were required to step off this curb or that "all such similarly designed curbs could be deemed defective" (170 Ill. App. 3d at 152) seems farfetched and is sheer conjecture.

I believe the majority errs in relying on *Chicago Tribune Co. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 260. The majority reasons that, based on *Chicago Tribune*, "there was sufficient evidence establishing both that claimant's injuries resulted from a defect in the employer's premises and that the claimant's injuries were directly re-

lated to the duties of his employment." (170 Ill. App. 3d at 151.) I find no mention in the facts here of any evidence of the existence or nature of any "defect." In contrast, the evidence in *Chicago Tribune* permitted a reasonable inference that snow, ice and water had collected on that particular lobby floor. There was no reference to typical lobby floors in public buildings. Most significantly, the court narrowed the employment-related hazard to that particular lobby, which it found the Commission could infer was wet and therefore in a dangerous or defective condition. No such dangerous condition could be inferred here. The majority cannot narrow its focus to this particular curb because there was no evidence distinguishing it from any other curb.

A reviewing court must examine the record and determine whether the evidence supports the Commission's finding. If the evidence fails to support its finding, the court has a duty to set aside the award. *County of Cook v. Industrial Comm'n* (1977), 68 Ill. 2d 24.

I would hold that the Commission's decision is against the manifest weight of the evidence because claimant's accidental injury did not arise out of the employment with his employer.

McCULLOUGH, J., joins in this dissent.